UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DERYA (DIKICI) TERZIOGLU<br>Petitioner, | ) | |
| v. | ) | Case No.<br>**FILED UNDER SEAL** |
| MICHAEL NESSINGER, WARDEN,<br>Respondent | ) | |

**DERYA (DIKICI) TERZIOGLU'S PETITION**
**FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

1. The petitioner, Derya (nee Dikici) Terzioglu (Mrs. Terzioglu or "Petitioner") is a Turkish citizen and lawful permanent United States resident (green-card holder) with no prior criminal record who was found extraditable to Turkey pursuant to the decision entered by Magistrate Judge Donald L. Cabell of the District of Massachusetts on December 15, 2025. *United States v. Derya Terzioglu (Dikici)*, No. 24-mj-01198-DLC (D. Mass.), ECF No. 83 (attached hereto as Exhibit A).[1]

2. Mrs. Terzioglu seeks review of the Magistrate Judge's December 15, 2025 Order finding Mrs. Terzioglu's case certifiable for extradition to the Secretary of State. Exhibit A.

3. Mrs. Terzioglu further seeks review of the Magistrate Judge's December 15, 2025 Electronic Order Denying Mrs. Terzioglu's Motion for Release and Renewed Motion for Bail, *United States v. Derya Terzioglu (Dikici)*, No. 24-mj-01198-DLC, ECF No. 84 (attached hereto as Exhibit B), and her immediate release from detention at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island (the "Wyatt Detention

[1] "ECF No." refers to docket entries in the underlying case *United States v. Derya Terzioglu (Dikici)*, No. 24-mj-01198-DLC (D. Mass.).

Center"), pending the conclusion of these extradition proceedings based on Mrs. Terzioglu's "special circumstances" justifying release on bail.

4. Finally, Mrs. Terzioglu seeks review of the Magistrate Judge's September 9, 2024 Order denying Mrs. Terzioglu's motion for discovery. *United States v. Derya Terzioglu (Dikici)*, No. 24-mj-01198-DLC, ECF No. 35 (attached hereto as Exhibit C).

**PARTIES**

5. Mrs. Terzioglu is a citizen of Turkey who lawfully entered the United States in July 2011 to live with her then-fiancé, now-husband, Aykut Terzioglu. From July 2011 until her detention in connection with this pending extradition matter thirteen years later on April 17, 2024, Mrs. Terzioglu lived with her husband and two young daughters in their home in Charlestown, Massachusetts. Mrs. Terzioglu has now been detained at the Wyatt Detention Center for over **twenty-five months**.

6. Michael Nessinger is the Warden of the Wyatt Detention Center. His address is 950 High Street, Central Falls, Rhode Island, 02863. Warden Nessinger is included in his official capacity.

**JURISDICTION AND VENUE**

7. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 2241.

8. Venue in this Court is proper because Mrs. Terzioglu is being held in Rhode Island. *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

**SUMMARY OF ARGUMENT**

9. [redacted]

10. [redacted]

11. Mrs. Terzioglu should be released from detention because her case presents special circumstances justifying her release pending a final extradition decision based on: (1) the length of time that Mrs. Terzioglu has already been detained, along with the fact that these proceedings are unlikely to resolve soon; (2) Mrs. Terzioglu's personal circumstances, including the impact that her detention has had and is having on Mrs. Terzioglu and her two young daughters (ages 10 and 5); (3) Turkey's **twelve-year delay** in pursuing Mrs. Terzioglu's extradition, indicating a lack of diplomatic necessity to detain her; (4) Mrs. Terzioglu's likelihood of success on the merits; (5) the availability of pretrial release for similar crimes in Turkey; and (6) the fact that Mrs. Terzioglu lived openly in the United States for nearly thirteen years, including more than two years after she became aware that there were charges pending against her in Turkey, and a United States Magistrate Judge has found that she is not a danger to the community and conditions could be fashioned to mitigate the risk of flight.

## FACTUAL BACKGROUND

### The Events that Took Place in Turkey

12. Mrs. Terzioglu has not been convicted of a crime in Turkey nor accused of committing any misconduct in the United States.

13. [redacted]

14. [redacted]

15. [redacted]

16. [redacted]

17. [redacted]

18. [redacted]

19. [redacted]

---

[2] [redacted]

[3] [redacted]

[redacted]

20. [redacted]

21. [redacted]

22. [redacted]

23. [redacted]

24. [redacted]

25. [redacted]

26. [redacted]

27. [redacted]

28. [redacted]

29. [redacted]

30. [redacted]

---

[4] [redacted]

31. [redacted]

32. [redacted]

33. [redacted]

[redacted]

34. When she left Turkey, Mrs. Terzioglu was not the subject of a pending investigation and there were no charges against her. *Audit Report* at 1 (attached hereto as Exhibit G); *Indictment* at 3 (attached hereto as Exhibit H).

35. [redacted]

**Turkey's Investigation into Mrs. Terzioglu**

*The DenizBank Audit Report*

36. [redacted]

37. [redacted]

38. [redacted]

39. [redacted]

40. [redacted]

41. [redacted]

[redacted]

42. The brief notes of witness statements frequently do not attribute information to a particular witness among multiple people who were interviewed. *See, e.g., id.* at 10–11.

43. At least some of the witness statements and recorded phone calls are listed as "Annexes of the Report" at the end of the Audit Report. *Id.* at 30–31. None of those Annexes have been provided to the United States government, the Court, or Mrs. Terzioglu.

44. The witness statements and recorded phone calls that the DenizBank Audit Committee allegedly reviewed are not included in the materials that Turkey provided to the United States or those that the United States provided to the court. Mrs. Terzioglu does not have access to those witness statements or recorded phone calls.

45. The DenizBank employees who drafted the Audit Report made self-serving judgment calls regarding the veracity of the witness interviews without providing the underlying statements in full.

46. [redacted]

[redacted]

47. The Audit Report is unsworn.

[redacted]

48. [redacted]

49. [redacted]

50. [redacted]

a. [redacted]

b. [redacted]

c. [redacted]

[redacted]

[redacted]

51. [redacted]

52. [redacted]

53. [redacted]

54. [redacted]

55. [redacted]

*<u>The Three Experts Report</u>*

56. The extradition materials provided by Turkey also include a one-page, undated document identified as being from the Republic of Turkiye, Istanbul, 8th Assize Court, entitled "Report by Three Experts." *See Three Experts Report* (attached hereto as Exhibit J).

57. The single-page report appears to be an excerpt from a longer report, which Turkey did not provide to the United States, which the United States did not submit to the Court, and which has not been provided to Mrs. Terzioglu.

58. The Three Experts Report starts in the middle of a section that has no header, contains a header for only Section "VI – Conclusion" of the report, and starts with an ellipsis. *Id.*

59. The report was allegedly based on the evidence in "the case file," which was also never produced. *Id.*

60. The Three Experts Report and the Audit Report are inherently contradictory.

61. [redacted]

62. [redacted]

> [redacted]

[redacted]

63. [redacted]

**Turkey's Indictment of Mrs. Terzioglu**

64. On December 13, 2011, based on the Audit Report, the Chief Public Prosecutor's Office for the Republic of Turkiye, Bakirkoy, issued the original Bill of Indictment in Turkey. *See* Indictment.

65. [redacted]

66. [redacted]

[redacted]

[redacted]

67. [redacted]

**Turkey's Delayed Extradition Request**

68. Turkey made no attempt to extradite Mrs. Terzioglu when the Indictment came down in 2011 even though Turkey knew, as early as July 13, 2011, that Mrs. Terzioglu had left Turkey to live with her fiancé in Boston. *See Audit Report* at 2.

69. On October 3, 2014, three years after the Indictment, Turkey requested Mrs. Terzioglu's extradition for aggravated embezzlement, in violation of Article 160/2 of Banking Law

5411, and Articles 43 and 53 of Turkish Penal Code 5237. ECF Nos. 1 (Complaint); 1-2 (Decl. of T. Heinemann).

70. The United States requested additional materials from Turkey regarding the extradition request after concluding there was insufficient information to support Turkey's initial request, despite Turkey's three-year delay in submitting the request. *Request from A. Austin (Senior Trial Attorney) regarding the need for additional information regarding Turkey's extradition request for Derya Dikici* (attached hereto as Exhibit K).

71. The United States requested witness statements and phone conversation records. *Id.*

72. Turkey waited **eight more years**, until August 2023, to supplement its extradition request. *EXT-DIKICI-00139* (Turkey's Responses to the Request for Additional Information with Respect to the Extradition Request Made for Accused Derya Dikici) (attached hereto as Exhibit L). By that point, Turkey had waited **more than twelve years** after the Indictment to seek Mrs. Terzioglu's extradition.

73. Turkey's supplemental submission did not include even a single witness statements nor a single phone conversation record, notwithstanding the United States' request for them. *Id*.

**Mrs. Terzioglu Lived Openly in the United States For Thirteen Years from 2011 to 2024**

74. On July 12, 2011, Mrs. Terzioglu flew from Istanbul, Turkey, to Boston to live with her then-fiancé (now husband) Mr. Terzioglu, who picked her up from the airport in Boston. *Aykut Decl*. at 4.

75. During its investigation, DenizBank determined that Mrs. Terzioglu had flown to the United States to live with Mr. Terzioglu, who was working in Boston at an asset management firm. *Audit Report* at 2, 26.

76. On or about July 13, 2011, Mrs. Terzioglu's father provided Mr. Terzioglu's full name to DenizBank and stated that Mrs. Terzioglu had flown to Boston to live with him. *Id.*

77. That information was then provided to prosecutors in Turkey. So, by 2011, the Turkish prosecutors knew that Mrs. Terzioglu was living in the United States. *Indictment* at 2.

78. [redacted]

79. [redacted]

80. While living in Charlestown, Massachusetts, Mrs. Terzioglu renewed her Turkish passport (October 2011), applied for a green card (2011/2012), submitted a U.S. citizenship application and completed an immigration interview (2020). *Id.* at 5.

81. Mrs. Terzioglu learned there was a case pending against her in Turkey—and that she could be extradited—in 2021, when she was told that she could not obtain U.S. citizenship until she resolved the case. *Id.*

82. [redacted]

83. Mrs. Terzioglu nevertheless continued to live openly with her family in their Charlestown, Massachusetts home and to participate in and contribute to their community. *Id.*

**Mrs. Terzioglu's Detention**

84. On April 10, 2024, the government filed the Complaint with an exhibit that included the Indictment, the Audit Report, the Three Experts Report, and the treaty between Turkey and the United States (the "US-Turkey Treaty"). ECF Nos. 1 (Complaint), 1-2 (Decl. of T. Heinemann).

85. Mrs. Terzioglu was arrested on April 17, 2024, and has now been detained at the Wyatt Detention Center for over **<u>twenty-five months</u>**, with no end in sight.

86. During Mrs. Terzioglu's detention, she and her two young daughters (now ages 10 and 5) have struggled significantly with the separation. *May 30, 2024 Letter from Dr. Nicholas Pepe and Dr. Dana Allswede* (the "Drs. Pepe & Allswede Letter") (attached hereto as Exhibit M); *Aykut Decl.* at 5.

87. [redacted]

88. [redacted]

[redacted]

89. [redacted]

90. [redacted]

[redacted]

91. The parties initially filed competing motions regarding Mrs. Terzioglu's detention. The government filed a motion for detention with a supporting memorandum. ECF No. 6. Mrs. Terzioglu filed an Application for Bail and supporting memoranda, seeking her release from custody pending the final decision on her extradition based on "special circumstances" justifying her release and the fact that she is neither a flight risk nor a danger to the community. ECF Nos. 27, 31, 34.

92. In her Application for Bail and supporting memoranda, Mrs. Terzioglu argued that the following special circumstances existed, justifying her release pending the conclusion of the extradition proceedings: (1) the anticipated length of the extradition proceedings; (2) the lack of diplomatic necessity to detain Mrs. Terzioglu based on Turkey's twelve-year delay in seeking her extradition; (3) her likelihood of success on the merits; (4) the availability of release in Turkey; and (5) the impact that her detention was having on her two young daughters. ECF Nos. 27, 31, 34. Articles 109 and 110 of the Turkish Penal Code allow individuals charged with criminal offenses, including embezzlement, to be placed under "judicial control" and granted conditional release.[5] *RAG Report* at 18.

[5] Mrs. Terzioglu has already served twice the likely sentence that a Turkish court would have imposed had she been convicted of any crime there. *See* https://www.prisoninsider.com/en/countryprofile/turkiye-

93. After a four-month period with no court action on Mrs. Terzioglu's Application for Bail, on October 16, 2024, Mrs. Terzioglu filed a Motion Seeking an Order on her Application for Bail. ECF No. 55.

94. On October 17, 2024, the Magistrate Judge granted the government's Motion for Detention, denied Mrs. Terzioglu's Application for Bail, and indicated that a further explanation of the decision was forthcoming. ECF No. 56; Transcript of Oct. 17, 2024 Extradition Hearing.

95. During the October 17, 2024 hearing, the Magistrate Judge found that Mrs. Terzioglu would not pose a risk of danger and that, although there would be a risk of flight, conditions could be fashioned to mitigate that risk.[6] Transcript of Oct. 17, 2024 Extradition Hearing.

96. Six months later, on March 21, 2025, with no further explanation issued by the Magistrate Judge, Mrs. Terzioglu filed a Motion for Release on Humanitarian Grounds. ECF No. 67. Mrs. Terzioglu had been detained for nearly twelve months at that point.

97. Six months after that—when Mrs. Terzioglu had been detained for nearly 18 months—on September 29, 2025, Mrs. Terzioglu filed a Renewed Application for Bail and Motion for Release with a supporting memorandum. ECF Nos. 71, 75. The government opposed the motion. ECF No. 76. And Mrs. Terzioglu filed a reply memorandum in support of her motion. ECF No. 79. The briefing was complete on October 29, 2025.

---

2024?s=vue-d-ensemble#155707 (according to Prison Insider, the average length of imprisonment in Turkey in 2024 was 9.6 months (citing the Council of Europe Annual Penal Statistics 2024, https://wp.unil.ch/space/files/2025/09/250924_rapport-space-i-2024.pdf)).

[6] Mrs. Terzioglu's brother-in-law, Ahmet Terzioglu, and his wife have been and continue to be willing to offer their condominium in Charlestown, with an approximate value of $825,000 and no mortgage, as collateral to secure Mrs. Terzioglu's release on bail. ECF Nos. 27, 75-3 (Letter of Paula M. Terzioglu).

98. On December 15, 2025, the Magistrate Judge finally issued a decision on Mrs. Terzioglu's detention. In an electronic order, the Magistrate Judge denied Mrs. Terzioglu's Motion for Release—which had been pending for nine months with no decision—and her Renewed Application for Bail. ECF No. 84.

99. In the text order, however, the Magistrate Judge provided: "should [Mrs. Terzioglu] be able to (1) show that these proceedings are unlikely to resolve soon, and (2) present competent authority suggesting that Article 9 of the Treaty does not legally foreclose the issue of bail despite (*sic*), the court will promptly revisit this ruling." ECF No. 84.

100. On February 18, 2026, while still awaiting a final certification and committal for extradition, Mrs. Terzioglu filed another Motion for Release and supporting memorandum directly addressing both items set forth in the Magistrate Judge's order. ECF No. 93. The government opposed the motion, ECF No. 94, and Mrs. Terzioglu submitted a reply memorandum in support of the motion, ECF No. 97.

101. In her Motion for Release and supporting memoranda, Mrs. Terzioglu set forth a detailed explanation for her expectation that these proceedings are unlikely to resolve any earlier than February 2027, and provided case law establishing that Article 9 of the US-Turkey Treaty does not foreclose the issue of bail. ECF Nos. 93, 97. That case law included a case in which the United States District Court for the District of New Jersey granted bail to an individual who had been certified for extradition pursuant to the exact same US-Turkey Treaty at issue in Mrs. Terzioglu's case. ECF Nos. 93, 97.

102. Although the Motion for Release was fully briefed as of March 4, 2026, the Magistrate Judge took no action for over a month. Mrs. Terzioglu filed an Assented-to Motion for a Status Conference on April 14, 2026. ECF No. 101.

103. The Magistrate Judge held a Status Conference on April 30, 2026, during which the parties set forth their positions on Mrs. Terzioglu's Motion for Release.

104. During the April 30, 2026 Status Conference, the Magistrate Judge again stated that Mrs. Terzioglu would not pose a risk of danger and that conditions could be fashioned to mitigate the risk of flight.

105. During the April 30, 2026 Status Conference, the Magistrate Judge indicated that he would accept additional case law addressing whether 18 U.S.C. § 3184 prohibits courts from releasing individuals on bail after they have been certified for extradition, even though the government conceded in its own submission that the "majority of courts that have addressed the question of whether Section 3184 prohibits post-certification bail have decided it does not." ECF No. 94 at 4.

106. On May 8, 2026, Mrs. Terzioglu submitted a notice of supplemental authority citing case law establishing that Section 3184 does not prohibit post-certification bail, including a First Circuit decision. ECF No. 107.

107. The Magistrate Judge never ruled on Mrs. Terzioglu's Motion for Release.

**Mrs. Terzioglu's Discovery Motion**

108. On May 24, 2024, Mrs. Terzioglu filed the Motion seeking discovery of, *inter alia*, two critical categories of evidence that are necessary for Mrs. Terzioglu to defend herself: [redacted] ECF No. 20.

109. The materials that Turkey provided to the United States government in support of its supplemental extradition request, which, in turn, the United States government submitted to the court, are incomplete, contradictory, and unreliable.

110. [redacted]

111. The Three Experts Report is clearly incomplete. *Id.* (including only Section "VI – Conclusion" of the report).

112. As a result, the materials submitted to the Court in support of the request to extradite Mrs. Terzioglu were unreliable.

113. Mrs. Terzioglu requested discovery (the recorded calls and witness statements) that is necessary to explain the contradictions and incomplete records that existed in the materials upon which the government's case was built.

114. The Magistrate Judge had discretion to order the government to request that discovery from Turkey. *See Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1213 (S.D. Cal. 1997) (ordering the United States to request discovery from Mexico); *United States v. Montemayor Seguy*, No. 03-449 (S.D. Tex., Feb. 5, 2004), Dkt No. 7 (permitting defendant to "make specific requests for more documents from Mexico to the Govt").

115. On September 4, 2024, the Magistrate Judge denied Mrs. Terzioglu's Motion. *Exhibit C.* [redacted]

116. The Magistrate Judge's decision not to grant the requested discovery was wrong as a matter of law. "Excluded evidence affects a determination of probable cause, and so it is within the scope of habeas review to examine whether the magistrate judge abused his discretion by excluding evidence." *Grabowski v. Martin*, 537 F. Supp. 3d 204, 208 (D.R.I. 2021).

**Magistrate Judge Cabell's Extradition Decision**

117. On September 26, 2024, the government filed its memorandum of law in support of extradition. ECF No. 47. The government argued that there was probable cause to believe that Mrs. Terzioglu committed the alleged offense based on (1) a summary from the Turkish court; (2) the Indictment; and (3) the Audit Report prepared by DenizBank.

118. [redacted]

119. No additional evidence was submitted in support of the Complaint.

120. On October 17, 2024, the Magistrate Judge held an extradition hearing.

121. On December 15, 2026, the Magistrate Judge determined that Mrs. Terzioglu was extraditable and requested that the government submit a proposed Certificate of Extraditability and order of commitment. ECF No. 83.

122. On December 16, 2026, the government filed the proposed Certification and Committal for Extradition. ECF No. 87. On December 17, 2026, Mrs. Terzioglu filed a Motion to Modify the Proposed Order for Certification and Committal for Extradition. ECF No. 89.

123. On December 18, 2026, the Magistrate Judge granted Mrs. Terzioglu's assented-to motion for a stay of the execution of the Certification and Committal for Extradition, staying execution for 28 days so that Mrs. Terzioglu could pursue habeas relief. ECF No. 90.

124. On April 30, 2026, the Magistrate Judge issued a Certification and Committal for Extradition regarding Mrs. Terzioglu. ECF No. 105.

## COUNT I
## 28 U.S.C. § 2241
## Arrest and Confinement in Violation of the United States Constitution, Laws, and Treaties

125. Petitioner realleges and incorporates the above paragraphs as if set forth fully herein.

126. Mrs. Terzioglu's **twenty-five-month** detention violates her rights under the Fourth and Fifth Amendments of the United States Constitution and 18 U.S.C. § 3184 because she has established "special circumstances" justifying her release.

127. Mrs. Terzioglu's arrest and detention violate her rights under the Fourth and Fifth Amendments and 18 U.S.C. § 3184 because Turkey has not submitted sufficient information to establish probable cause that she has committed an extraditable offense.

128. For these and other reasons, Mrs. Terzioglu's arrest, detention, and potential future extradition are contrary to the requirements of the US-Turkey Treaty and the Constitution and laws of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Mrs. Terzioglu respectfully requests that the Court immediately grant the following relief:

A. Order Mrs. Terzioglu's release from detention immediately, pending a final decision on her extradition, based on the special circumstances that exist in her case;

B. Issue an order granting Mrs. Terzioglu's Habeas Petition and directing the immediate and permanent discharge of the conditions imposed on her in connection with the extradition case;

C. Vacate the Certificate of Extraditability issued by Magistrate Judge Donald L. Cabell issued on April 30, 2026 and order that Petitioner not be extradited to Turkey;

D. Vacate the Order denying Mrs. Terzioglu's motion for discovery issued by Magistrate Judge Donald L. Cabell on September 4, 2024, and compel the United States to request the discovery from Turkey; and

E. Grant Petitioner any further relief the Court deems equitable and just.

Dated: May 28, 2026

Respectfully submitted,

DERYA (DIKICI) TERZIOGLU

By her attorneys,

/s/ *Pietro A. Conte*
Pietro A. Conte (RI Bar No. 10471)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
pac@dcglaw.com

Peter E. Gelhaar (*pro hac vice forthcoming*)
Emma Notis-McConarty (*pro hac vice forthcoming*)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
peg@dcglaw.com
enm@dcglaw.com

**VERIFICATION**

I, counsel for Petitioner Derya (Dikici) Terzioglu, hereby verify and declare under penalty of perjury that I have read the foregoing Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and know the contents thereof, and that the matters stated therein are true to the best of my knowledge, information, and belief.

Signed under the pains and penalties of perjury under the laws of the United States of America this 28th day of May, 2026.

*/s/ Pietro A. Conte*
Pietro A. Conte

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document will be sent to counsel for the Warden Nessinger by electronic mail.

*/s/ Pietro A. Conte*
Pietro A. Conte