UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DERYA (DIKICI) TERZIOGLU,<br>Petitioner,<br><br>v.<br><br>WARDEN MICHAEL NESSINGER,<br>*Warden of the Wyatt Detention Center*,<br>Respondent. | C.A. No. 26-cv-350-MRD-PAS |

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

Before the Court is an Amended Petition for Writ of Habeas Corpus that was filed by Derya (Dikici) Terzioglu. ECF No. 14. Mrs. Terzioglu, a Turkish citizen, is a lawful permanent resident of the United States and holds a valid green card. For around thirteen years she lived without issue in Charlestown, Massachusetts with her husband and two young daughters. Now, the Turkish government seeks to extradite Mrs. Terzioglu predicated on a pending charge for aggravated embezzlement in the Turkish courts dating back more than a decade. As a result, she has been detained at Wyatt Detention Center in Central Falls, Rhode Island, for over two years as the extradition process trickles through the federal court system.

On December 15, 2025, Mrs. Terzioglu was found extraditable to Türkiye by a Magistrate Judge in the District of Massachusetts.[1] ECF No. 14-1. Through her instant Amended Petition, Mrs. Terzioglu seeks review of that decision, as well as various orders the Magistrate Judge issued denying her discovery requests and pleas for release from detention on bail. Directing the Court's attention to ever-developing special circumstances, Mrs. Terzioglu again petitions for her immediate release from detention.

As explained below, while this Court cannot disturb the Magistrate Judge's extradition certification or ruling denying Mrs. Terzioglu's demand for discovery, the Court finds that special circumstances do warrant her release for the remainder of her extradition proceedings.

## I. BACKGROUND

### A. Mrs. Terzioglu's Embezzlement Charge

Without getting lost in the intricacies of the events giving rise to Mrs. Terzioglu's aggravated embezzlement charge, the Court will briefly relay what is in the record before it. Mrs. Terzioglu is accused of embezzling funds from client accounts at her former employer, DenizBank, into an account belonging to Nizamettin and Hulkiye Aytemiz (the "Aytemiz Account") and managed by their daughter, Oylum Aytemiz. *See* ECF No. 14 at 5. [redacted]

---

[1] *See United States v. Derya Terzioglu (Dikici)*, No. 24-mj-01198-DLC (D. Mass.), ECF No. 83.

[redacted][2] *Id.* During the relevant period, which the Government suggests spans May 2011 into July 2011, Mrs. Terzioglu was a portfolio manager at DenizBank. *Id.* [redacted] *Id.* at 6. These trades resulted in significant losses. *Id.* Accordingly, the Amended Petition makes the case that Mrs. Terzioglu fled Türkiye in 2011—not for fear of prosecution for the alleged embezzlement—[redacted] *Id.* at 5-8.

In August 2011, the DenizBank Audit Committee issued a report related to the alleged embezzlement (the "Audit Report"). *Id.* at 9. The Audit Report contains summaries of witness statements and details of alleged recorded phone calls between Oylum Aytemiz and Mrs. Terzioglu. *Id.* The Amended Petition presents the Audit Report as severely flawed, alleging it misrepresents key information, contains false statements, and is unsworn and self-serving. *Id.* at 10–11. Nevertheless, on December 13, 2011, this Audit Report, along with an expert report, witness statements, and phone records, was used to issue the original Bill of Indictment ("the Indictment") against Mrs. Terzioglu in Türkiye.[3] *Id.* at 14.

---

[2] According to the Petition, [redacted]

[3] The Indictment lists three suspects: Mrs. Terzioglu, Oylum Aytemiz, and an individual named Muttalip Isik. ECF No. 14 at 14.

### B. Mrs. Terzioglu's Extradition

On October 3, 2014, three years after Mrs. Terzioglu had fled to the United States, Türkiye requested her extradition for aggravated embezzlement. *Id.* at 15. In response, the United States requested additional materials regarding the extradition request, specifically witnesses statements and phone records. *Id.* The Amended Petition provides that Türkiye failed to supplement its extradition request until August 2023, eight years after the country's initial extradition request. *Id.*

On April 10, 2024, the Government filed a Complaint along with the Indictment, the Audit Report, a brief expert report, and the relevant treaty between Türkiye and the United States in the District of Massachusetts. *Id.* at 17. The Magistrate Judge found Mrs. Terzioglu extraditable on December 15, 2025. ECF No. 14-1.

### C. Mrs. Terzioglu's Detention

Mrs. Terzioglu has been detained at Wyatt Detention Center since she was arrested on April 17, 2024. ECF No. 14 at 17. She has fought her detention through multiple motions seeking bail, release, or both; all of which have been denied. *See* ECF Nos. 14-2; 14-17; 14-18.

### D. Mrs. Terzioglu's Discovery Motion

Less than a month after her initial arrest, Mrs. Terzioglu filed a motion seeking discovery, wherein she sought copies of the phone call records referenced in the Audit Report as well as witness statements. ECF No. 14 at 23. On September 4,

2024, the Magistrate Judge denied Mrs. Terzioglu's discovery motion. ECF Nos. 14 at 24; 14-3.

**E. Mrs. Terzioglu's Habeas Petition**

Mrs. Terzioglu first filed a Petition for Writ of Habeas Corpus in this Court on May 28, 2026. ECF No. 1. She filed the Amended Petition on August 3, 2026.[4] ECF No. 14. In her Amended Petition, Mrs. Terzioglu challenges several of the Magistrate Judge's rulings, including: the probable-cause finding, the denial of Mrs. Terzioglu's motion for discovery, and his denial of her multiple requests for release on bail. The Court will address each basis of Mrs. Terzioglu's Amended Petition in turn.

## II. LEGAL STANDARD

A district court's review of a magistrate judge's extradition decision is conducted via consideration of a petition for writ of habeas corpus. *Collins v. Miller*, 252 U.S. 364, 369–70 (1920). Such examination "is not a means for rehearing what the magistrate [judge] already decided," *In re Extradition of Manzi,* 888 F.2d 204, 205 (1st Cir. 1989) (citations omitted), *cert. denied,* 494 U.S. 1017 (1990), but instead warrants a scope of review "more limited than [a] direct appeal," *Brauch v. Raiche*, 618 F.2d 843, 847 (1st Cir. 1980). The district court may consider "whether the magistrate [judge] had jurisdiction to consider the matter, whether the offense charged is within the treaty and[,] by a somewhat liberal construction, whether there was *any evidence* warranting the finding that there was reasonable ground to believe

[4] The Amended Petition includes a challenge to the Magistrate Judge's most recent denial of her request for release (docketed on July 23, 2026). ECF No. 14 at 23.

the accused guilty." *Manzi,* 888 F.2d at 205 (emphasis added); *see Aguasvivas v. Pompeo*, 984 F.3d 1047, 1055 (1st Cir. 2021). The First Circuit has instructed liberal deference be afforded to the magistrate judge when considering this "any evidence" language. *See Koskotas v. Roche*, 931 F.2d 169, 176 (1st Cir. 1991). Notwithstanding the deference that must be given, "serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings," *Manzi,* 888 F.2d at 206, including the legality of "their detention pursuant to the [extradition] certifications[,]" *Aguasvivas*, 984 F.3d at 1051.

## III. DISCUSSION

### A. Probable Cause

Mrs. Terzioglu first challenges the Magistrate Judge's probable-cause finding, which forms the basis of his certification of her extradition. *See* ECF No. 14-1. In the Extradition Certification Order, ECF No. 14-1, the Magistrate Judge dedicates several pages to discussing whether there was reason to believe that Mrs. Terzioglu committed the offense of which she is accused. In explaining his probable-cause finding, the Magistrate Judge cites multiple pieces of evidence submitted by the Turkish government beyond the Audit Report. *Id.* at 9. He cites the Bill of Indictment, an expert report, bank records, witness statements, call summaries, and "other information according to the Turkish court where [her] criminal case is pending." *Id.* Ultimately, he decided that "[t]his evidence, alongside other documents contained in the voluminous Bank Audit Report, such as an email sent from [Mrs. Terzioglu's] account notifying DenizBank operations that the customers no longer

wanted to receive account updates, altogether support a finding of probable cause." *Id.* (internal citation omitted).

Mrs. Terzioglu's main contention with the probable-cause finding is that it is largely based on the Audit Report she alleges is unreliable and biased against her. ECF No. 14-1 at 8–9. She claims that Türkiye's case against her "is built upon an unreliable Audit Report from a corrupt Turkish bank with a documented history of steering embezzlement investigations to benefit the bank." ECF No. 17-1 at 15; *see* ECF No. 14 ¶ 10 (arguing Türkiye's "case relies on an unsworn bank audit report containing only cherry-picked summaries of alleged hearsay witness statements and written snippets of alleged audio recordings …"). As Mrs. Terzioglu concedes, however, the Magistrate Judge was required to make a decision based only on the evidence he had on the record before him. *See* ECF No. 17-1 at 23. In the extradition context, it is of no consequence that the materials before the Magistrate Judge were unsworn or allegedly biased. *See, e.g.*, *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1162–63, 1166 (11th Cir. 2005) (upholding probable cause determination based on unsworn 106-page bill of indictment prepared by a foreign investigator describing witness statements and other hearsay evidence); *Manta v. Chertoff*, 518 F.3d 1134, 1139–40, 1145–47 (9th Cir. 2008) (upholding probable-cause determination based on investigation report written by prosecutor). Nor may this Court reweigh or re-evaluate the evidence or speculate as to what evidence could have better supported his conclusion. *See Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (habeas review is "not a means for rehearing what the magistrate already has decided").

Given that this Court's review is cabined at whether the Magistrate Judge based his probable-cause finding on *any* evidence, *Manzi,* 888 F.2d at 205, it is plain to this Court that the finding must stand. Mrs. Terzioglu's Amended Petition is denied to the extent that it asks this Court to vacate the extradition certification decision.

**B. The Discovery Motion**

Mrs. Terzioglu next challenges the Magistrate Judge's denial of her discovery motion, in which she sought an "order compelling the United States to take steps to collect evidence bearing on the underlying charges." ECF No. 14-3. In reviewing this request, the Court first acknowledges that "[a]n extradition hearing is not a criminal proceeding, and the person whose return is sought is not entitled to the rights available in a criminal trial at common law." *In re Extradition of Handanovic*, 826 F. Supp. 2d 1237, 1239 (D. Or. 2011) (citing *Charlton v. Kelly,* 229 U.S. 447, 461 (1913)). This principle extends to the discovery process and the evidentiary considerations which underlie it. *Id.* at 1240–41. Still, it is within the magistrate judge's discretion to allow discovery "related to whether probable cause exists that the fugitive committed an extraditable offense." *Id.* (citing *Quinn v. Robinson,* 783 F.2d 776, 817 n.41 (9th Cir. 1986)); *see In re Extradition of Aguasvivas*, No. 17-MJ-4218-DHH, 2018 WL 3614137, at *8 (D. Mass. July 27, 2018), *aff'd*, 984 F.3d 1047 (1st Cir. 2021). Cognizant of the ever-present spirit of due process, this Court may review the magistrate judge's discovery decisions related to probable cause for abuse

of discretion. *Koskotas v. Roche*, 740 F. Supp. 904, 917 (D. Mass. 1990), *aff'd*, 931 F.2d 169 (1st Cir. 1991).

The Court has not found much case law to guide the outcome on this issue. What little caselaw is available in this context, however, supports the Government's position that Mrs. Terzioglu has no right to the discovery she seeks. As such, the Court declines to interfere with the denial of Mrs. Terzioglu's request for an order compelling the United States to gather evidence related to her embezzlement charge. The Court notes two points related to this conclusion. First, it trusts the Government's representation that it "has already turned over all materials in its possession, custody, or control" related to this matter. ECF No. 10 at 19; *cf. United States v. Basciano*, 763 F. Supp. 2d 303, 337 (E.D.N.Y. 2011) (looking to the Government's demonstrated cooperation with its discovery obligations and showings of good faith when denying a motion to compel more discovery from the Government). Second, as Mrs. Terzioglu admits, there is "no automatic right to discovery in an extradition case," even if the magistrate judge may have some limited ability to order discovery. ECF No. 17-1 at 28. As the Sixth Circuit has explained, "[t]he United States does not have any obligation or authority to obtain [discoverable] materials on behalf of petitioner." *In re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999). Instead, the United States "acts in a ministerial role [when executing the extradition proceedings] on behalf of the requesting sovereign … based on documents it has received from that nation's government." *Aguasvivas*, 2018 WL 3614137, at *8, 10 (citing *Drayer*, 190 F.3d at 414). Moreover, a "country seeking extradition is not

required to produce all its evidence" for the purpose of these extradition proceedings. *Quinn,* 783 F.2d at 815. Putting this all together, the Government lacks the power to force Türkiye to turn over more materials, which forecloses Mrs. Terzioglu's request. Accordingly, Mrs. Terzioglu's Amended Petition is denied to the extent that it challenges the Magistrate Judge's discovery rulings.

**C. Detention**

Finally, we reach Mrs. Terzioglu's request to be released from detention pending her extradition proceedings. ECF No. 14 at 2. The Court is hyper-aware that "[t]here is a presumption against bail in extradition cases and only 'special circumstances' justify release on bail." *United States v. Kin–Hong,* 83 F.3d 523, 524 (1st Cir. 1996) (collecting cases). Indeed, the extradition statute applicable here, 18 U.S.C. § 3184, directly contemplates the detention of an individual whose extradition has been certified. So does the United States's operative Treaty with Türkiye, which states that "[w]hen located, the person sought shall be detained until the competent authorities of the Requested Party reach their decision. If the request for extradition is granted, the detention shall be continued until surrender." United States-Turkey Treaty on Extradition and Mutual Assistance in Criminal Matters, 2 Pub. Papers 1390 (Aug. 2, 1979); ECF No. 17-1 at 12.

Such language, however, is not dispositive when it comes to Mrs. Terzioglu's detention. In *Wright v. Henkel*, the Supreme Court was "unwilling to hold that [reviewing courts] possess no power in respect of admitting to bail [even where this power is not] specifically vested by statute[.]" 190 U.S. 40, 63 (1903). While the Court

acknowledged that "bail should not ordinarily be granted in cases of foreign extradition," it held that reviewing courts may still consider whether "special circumstances" warrant relief.[5] *Id.* When such "special circumstances" exist, the decision to grant bail remains within the "sound discretion of the district court." *Beaulieu v. Hartigan,* 554 F.2d 1 (1st Cir. 1977); *see, e.g.*, *United States v. Casteneda-Castillo*, 739 F. Supp. 2d 49, 55–56 (D. Mass. 2010); *Yau-Leung v. Soscia,* 649 F.2d 914 (2d Cir. 1981); *Salerno v. United States,* 878 F.2d 317 (9th Cir. 1989); *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 598 (W.D. Va. 2013). In addition to "special circumstances," a petitioner must also show by "clear and convincing evidence that they are neither a risk of flight nor a danger to any person or the community." *Casteneda-Castillo*, 739 F. Supp. 2d at 55. Here, Mrs. Terzioglu asserts that she has both established special circumstances that justify her release on bail and that she is not a flight risk or danger to the community. ECF No. 18 at 6–12. After careful consideration, this Court agrees.

[5] The Government attempts to distinguish *Wright* by asserting that the Supreme Court intended the special-circumstances analysis to be applied only in cases where the extradition court has yet to certify the extradition, or so-called "pre-certification cases." ECF No. 10 at 23–26. The Government contrasts the posture in *Wright* with that of this case, where Mrs. Terzioglu's extradition has been certified, placing her in a "post-certification" status. This position is in direct contravention of First Circuit precedent. In *United States v. Williams*, the First Circuit addressed the question of whether *Wright* extends to both pre-certification and post-certification release. 611 F.2d 914 (1st Cir. 1979). The court answered in the affirmative. *Id.* at 915. The Court therefore declines the Government's invitation to find *Wright* inapplicable here.

### 1. Special Circumstances

"Determining whether a case presents special circumstances is a case specific endeavor and 'the list of potential special circumstances is not limited to those previously recognized in published decisions.'" *In re Extradition of Taylor*, 471 F. Supp. 3d 389, 394 (D. Mass. 2020) (quoting *Castaneda-Castillo*, 739 F. Supp. 2d at 56). Still, "[s]pecial circumstances" are limited to situations in which "'the justification [for release] is pressing as well as plain.'" *United States v. Williams,* 611 F.2d 914, 915 (1st Cir. 1979) (per curiam). Courts in this Circuit have recognized that "the overarching theme is that bail is appropriate only where the defendant's circumstances are 'extraordinary' and will subject the defendant to difficulties beyond those 'applicable to all defendants facing extradition.'" *In re Extradition Drumm*, 150 F. Supp. 3d 92, 96 (D. Mass. 2015) (quoting *In re Extradition of Nacif–Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993). Still, "what exactly constitutes 'special circumstances' has yet to be defined." *In re Extradition of Rangel Prentt*, No. 24-CV-80209-UNA, 2024 WL 2219823, at *11 (S.D. Fla. May 7, 2024).

In this case, there are several "special circumstances" at play. First, and most compelling, Türkiye has waited over twelve years to extradite Mrs. Terzioglu. As other courts have concluded, a deferment of this length suggests Türkiye has "not made prosecution of this offense a priority." *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006); *see also Castaneda-Castillo*, 739 F. Supp. 2d at 57–58. Thus, in this Court's view, this delay "weighs very heavily in favor of release" pending conclusion of the extradition process. *Castaneda-Castillo*, 739 F. Supp. 2d

at 58; *see also United States v. Singh*, No. 22-mj-71132-MAG-1 (KAW), 2022 WL 17404302, at *3–*4 (N.D. Cal. Dec. 2, 2022) (looking at a twenty-one year delay in prosecution and stating "[t]his significant delay in prosecution is a special circumstance justifying the grant of bail"); *United States v. Kollmar*, No. 19-mj-70677-MAG-1 (KAW), 2019 WL 2163005, at *4 (N.D. Cal. May 17, 2019) (looking at a twenty-year delay and deciding the same); *In re Extradition Lee*, Mag. No. 23-9089 (CLW), 2023 WL 2414447, at *4 (D.N.J. Mar. 8, 2023) (seventeen-year delay in seeking extradition constituted a special circumstance).

Second, Mrs. Terzioglu effectively argues that she would likely be afforded bail for her embezzlement charge in Türkiye. ECF No. 18 at 11–12. She provides, "Articles 109 and 110 of the Turkish Penal Code allow individuals charged with criminal offenses, including embezzlement, to be placed under 'judicial control' and granted conditional release[,]" and "that neither of the two other individuals listed in the indictment issued in her case—Muttalip Isik and Oylum Aytemiz—were detained on the related charges they faced in [Türkiye]." *Id.* Some courts have looked to the availability of bail for similar offenses in the requesting country as a "special circumstance" justifying release on bail. *See United States v. Taitz*, 130 F.R.D. 442, 446–47 (S.D. Cal. 1990); *In re Extradition of Nacif-Borge*, 829 F. Supp. at 1220–21 (D. Nev. 1993); *Kollmar*, 2019 WL 2163005, at *4. The Court agrees with the sound reasoning of these cases and finds that the availability of bail in Türkiye is a "special circumstance" warranting Mrs. Terzioglu's release. The Court is particularly moved by Mrs. Terzioglu's representation that neither of the other individuals charged on

the indictment have been detained on their related charges. ECF No. 18 at 12. Accordingly, this again weighs in favor of finding that "special circumstances" warrant Mrs. Terzioglu's release.

Lastly, the Court will address Mrs. Terzioglu's complaint that the anticipated length of her extradition proceedings is a "special circumstance" warranting her release. ECF No. 18 at 6–7. She argues that, having been in prison now for over two years, "[s]he has already been detained for twice the sentence she likely would have had to serve if she had actually been convicted of aggravated embezzlement in [Türkiye]—which, of course, she has not been." *Id.* This is not a compelling point, however, because she did not point to any case law to support this circumstance as one deemed "special" within the detention-during-extradition-proceedings calculus. To be sure, abnormal delays in the extradition process have been found to be potentially "special circumstances." *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996); *see also Salerno,* 878 F.2d at 317 (citing an unusual delay in the appeals process to be a special "circumstance."). However, "the normal passage of time inherent in the litigation process" cannot be a "special circumstance[]." *Id.* The Court also notes here that a review of the docket in the District of Massachusetts shows that Mrs. Terzioglu has tenaciously litigated her case, and the Court cannot attribute the delay in the extradition process solely to the Government.[6] *See United States v.*

[6] Mrs. Terzioglu also says that her likelihood of success on the merits of the charges against her is a "special circumstance" warranting her release. ECF No. 14 at 20. While other courts have looked at whether a petitioner is likely to win their case as part of the "special circumstances" analysis, this Court declines to do so. *See, e.g., Taylor v. McDermott*, No. 4:20-cv-11272-IT, 2020 WL 4569693, at *4–*5 (D.

*Derya Terzioglu (Dikici)*, 1:24-mj-01198-DLC-1. Still, the Court recognizes that two years of incarceration is a long time, and looking at the combination of circumstances here, it concludes that Mrs. Terzioglu has shown by clear and convincing evidence that special circumstances exist which warrant her release during the remainder of her extradition proceedings.[7]

---

Mass. Aug. 7, 2020). Consistent with the probable cause discussion *supra*, the Court is not willing to speculate regarding the efficacy of Türkiye's case against Mrs. Terzioglu. To do so in a meaningful way would require an examination of Turkish law and prosecution processes, tasks beyond this Court's capability at this juncture. Thus, while the Court acknowledges Mrs. Terzioglu's position, this factor has no bearing on its determination.

[7] Mrs. Terzioglu asks us to find that her familial situation also constitutes a special circumstance warranting her release. A review of the case law reveals that, time and time again, courts have refused to find that extenuating family circumstances constitute "special circumstances" in the extradition context. *See, e.g.*, *In re Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986); *Duca v. United States*, No. 95-CV-713, 1995 WL 428636, at *15, *16 (E.D.N.Y. July 7, 1995); *United States v. Conlin*, No. 3:26-MJ-39-SJF, 2026 WL 1501106, at *7 (N.D. Ind. May 29, 2026); *Taylor v. McDermott*, No. 4:20-cv-11272-IT, 2020 WL 4569693, at *7 (D. Mass. Aug. 7, 2020) ("The hardship of incarceration on family members, including those family members who have previously received care from the incarcerated individual, is a common concern amongst extraditees and prisoners alike."). This makes sense. "[D]etention commonly acts to deprive a family or loved one of the support of a helpful and vital member. Extradition courts for that reason have rejected familial caretaking responsibilities as a special circumstance." *In Re Taylor*, 471 F. Supp. 3d at 396.

Still, the Court is sensitive to Mrs. Terzioglu's situation. She has two young daughters who have now been separated from their mother for over two years, with no reunion date in sight. ECF No. 14 at 17–19. One daughter, now five years old, was only three when her mother entered into custody. *Id.* The other just turned ten. *Id.* The girls have experienced severe, adverse effects because of their mother's incarceration. *Id.* [redacted]

[redacted]

[redacted]

As the Court reflects on the reality of this, [redacted] it is difficult to conclude that this is not exactly the type of "plain and pressing" situation that warrants release. *Williams*, 611 F.2d at 915. After all, "[t]he list of potential 'special circumstances' is not limited to those previously recognized in published decisions." *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725 (W.D. La. 1999) (citing *Beaulieu,* 554 F.2d at 1). Together with the fact that the "special circumstances" determination is case-specific, *Castaneda-Castillo*, 739 F. Supp. 2d at 56, the Court finds Mrs. Terzioglu's family circumstances to be especially compelling here. True, aligned with the ethos of the cases cited above, we agree that a blanket permission to consider family circumstances as a "special circumstance" may eviscerate a standard that some have deemed unworkable and arbitrary. *See* Christopher S. Kelly, *Bail in International Extraditions: How the "Special Circumstances" Standard Has Become "Especially Confusing"*, 21 DCBA Brief 34 (2009) ("[I]n the [over] one hundred years since the *Wright* decision, the Supreme Court and Congress have wholly failed to clarify the rules and procedures for deciding the issue of bail in international extradition proceedings."). But here, the situation before the Court presents dynamics and delicacies beyond what other courts have been tasked with considering: the incarceration a mother of two young kids for over two years and counting due to one non-violent charge dating back over a decade.

Despite this record and the expression of these thoughts, there is no need to break new ground here because the Court has concluded that other, established "special circumstances" exist in this case. But, because the Court is entitled to consider *all*

### 2. Flight Risk & Danger to the Community

To succeed on her request for release, Mrs. Terzioglu is also obligated to show that she is neither a flight risk nor a danger to the community. *See Drumm*, 150 F. Supp. 3d at 96. To do so, she points to the following conclusion made by the Magistrate Judge on October 17, 2024:

> [B]ased on everything I have heard up until now, I wouldn't find the Relator to pose a risk of danger, that is, that her release would not pose an unreasonable risk of danger. There would be a risk of flight but I would assume, under the circumstances, conditions could be fashioned to mitigate that risk.

ECF No. 18 at 7. Mrs. Terzioglu also provides that "[d]uring [a] April 30, 2026 status conference, [] Magistrate Judge reiterated his prior conclusions: 'I have never found Ms. [Terzioglu] to pose a risk of danger and I have always assumed that a risk of non-appearance could be mitigated by the imposition of conditions . . . so that really the issue is special circumstances . . . .'" *Id.* (citing Extradition Court, ECF No. 104 (Audio Transcript of Apr. 30, 2026 Status Conference at 16:07–16:27). The Government pushes back on these statements, arguing that "now that [Mrs. Terzioglu] is aware that Türkiye is pursuing her extradition from the United States and that her extradition has been certified, she has an even stronger incentive to flee further." ECF No. 10 at 29. As the Government sees it, given the history of this case, "further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption." *Id.* at 30.

---

Mrs. Terzioglu's circumstances in combination—not in isolation—the Court includes its reflections on Mrs. Terzioglu's extenuating family circumstances here.

In an extradition case, flight risk and danger to the community are assessed separately from "special circumstances." *In Re Taylor*, 471 F. Supp. 3d at 394. Here, the Government does not disagree that Mrs. Terzioglu poses no danger to her community. ECF No. 10 at 29. Instead, it asserts only that she poses a "significant flight risk." *Id.* The Court disagrees, as reasonable measures can be taken here to ensure Mrs. Terzioglu's appearance at future proceedings. Thus, the Court here takes the same position as the Magistrate Judge "that really the issue [here] is special circumstances." ECF No. 18 at 7. Having resolved that issue above, the Court finds Mrs. Terzioglu is properly released from custody. Given her significant family ties and expressed critical need to be home with her young daughters, the Court concludes that she can be maintained in the community pending extradition proceedings. The Government may fashion conditions of release, including but not limited to the use of electronic monitoring to oversee Mrs. Terzioglu's whereabouts.

## IV. CONCLUSION

For these reasons, Mrs. Terzioglu's Amended Petition for a Writ of Habeas Corpus, ECF No. 14, is **DENIED** in part and **GRANTED** in part.

1. Mrs. Terzioglu's request for an Order revoking the Certification and Committal for Extradition is **DENIED**.

2. Mrs. Terzioglu's Amended Petition is **DENIED** to the extent that it challenges the September 9, 2024 Order denying her motion for discovery.

3. Mrs. Terzioglu's request for immediate release from detention is **GRANTED**. The Court sets the following conditions of release:

    a. Mrs. Terzioglu will be subject to home detention, except as expressly approved by Pretrial Services, with electronic surveillance to be paid for by her;

b. Mrs. Terzioglu is to report regularly to Pretrial Services; and

c. Mrs. Terzioglu's travel is restricted to Charlestown, Massachusetts.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

09/15/2026